IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARY A. REYNOLDS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1408 GMS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

## I.    INTRODUCTION

This case comes from the denial of Mary A. Reynolds' claim for Social Security disability benefits.  Reynolds, the plaintiff, applied for disability insurance benefits ("DIB") under Title II of the Social Security Act on February 4, 2003.  42 U.S.C. §§ 401-433 (2003).  In her application, Reynolds claimed she had been disabled since December 12, 2002 due to fibromyalgia and osteoarthritis.  (D.I. 13 at 66.)  She was found not disabled and her application was initially denied on March 28, 2003.  (Id. at  68.)  This finding was affirmed upon reconsideration on July 21, 2003.  (Id. at 73.)  Reynolds then requested a hearing before an Administrative Law Judge ("ALJ") which took place on April 21, 2004.  (Id. at 23.)  Following the hearing, ALJ Volkman issued an unfavorable written opinion on June 28, 2004.  (Id. at 11.)  Reynolds subsequently requested a review of ALJ Volkman's decision by the Appeals Council, which was denied on September 30, 2004.  (Id. at 5.)

Following the denial by the Appeals Council, Reynolds filed an appeal with this court on October 29, 2004.  (D.I. 2.)  Reynolds moved for summary judgment on October 3, 2005.  (D.I. 15.)

Subsequently, the Commissioner cross-moved for summary judgment on November 11, 2005. (D.I. 17.)  Because the court finds that ALJ Volkman's denial of DIB was supported by substantial evidence, the court will deny the plaintiff's motion and grant summary judgment in favor of the Commissioner.

## II.    BACKGROUND

Reynolds was a forty-six year old woman at the time of the hearing with a high school (plus) education. (D.I. 13 at 15.) Her past work experience includes employment as a Licensed Practical Nurse ("LPN") for twenty-six years. (Id. at 29.)  She stopped working as an LPN in December of 2002, because of her alleged exhaustion and pain from fibromyalgia and osteoarthritis, and went on short-term disability for six months. (Id. at 29-30.)  At the time of her hearing before ALJ Volkman, Reynolds had not returned to work, but had gone on Medicaid and obtained food stamps. (Id. at 21, 29.)

### A.    Medical Evidence

Reynolds began seeing Dr. Janine Coles Islam ("Dr. Islam") in February of 2003, complaining of fibromyalgia, osteoarthristis, and osteoporosis. (Id. at 255.)  During this visit, Dr. Islam "had a long discussion with the patient about increasing her activity level to help with her pain relief." (Id. at 257.) Dr. Islam also recommended a course of physical therapy ("PT"). Two months later, however, Reynolds had failed to begin a course of PT or exercise. (Id. at 249.)  During this visit, Dr. Islam also informed Reynolds that she was not disabled from the standpoint of fibromyalgia and should plan on returning to work. (Id. at 250.)  On May 14, 2003, Dr. Islam reported that Reynolds was participating in PT and finding it helpful. (Id. at 247.)

Reynolds also complained of fatigue to Dr. Islam.  To help combat the fatigue, Dr. Islam recommended a diet book, "Sugar Busters" on May 28, 2003.  (Id. at 354.)  On July 16, 2003, Reynolds again visited Dr. Islam, who reported her activity level unchanged, and also noted that Reynolds had not purchased the recommended book.  (Id. at 350-51.)  Dr. Islam's recommendations to Reynolds about increased activity and weight loss were echoed by other doctors.  For example, on July 8, 2003, Dr. Eric T. Schwartz ("Dr. Schwartz") recommended that Reynolds "continue with a home exercise program and possibly join either the YMCA or the Modern Maturity Center for pool therapy . . . [and] speak with her primary care physician regarding . . . possible weight loss, which I feel, will help alleviate some of her discomfort."  (Id. at 269.)  On September 18, 2003, Dr. Robert A. Moyer "strongly" recommended she lose weight, and that "if [her] ultimate diagnosis is fibromyalgia she needs to . . . be more aerobically fit."  (Id. at 387-88.)

Dr. Islam referred Reynolds to Dr. John Coll ("Dr. Coll") for sleeping difficulties.  (Id. at 251.)  Dr. Coll found that Reynolds suffered from mild obstructive sleep apnea.  (Id. at 284.)  He recommended nasal CPAP, which proved effective at a titration test performed on July 2, 2003.  (Id. at 282.)  Her sleep efficiency improved from 51% to 91% with the use of the CPAP machine.  (Id. at 282, 284.)  Dr. Coll made arrangements for Reynolds to get the CPAP machine, and recommended she use it every night.  (Id. at 282.)  A follow-up visit with Dr. Coll on October 22, 2003 showed that Reynolds was "doing well" on her course of treatment.  (Id. at 349.)

In January of 2004, Dr. Coll performed a nerve conduction study that showed Reynolds had "mild to moderate carpal tunnel syndrome bilaterally."  (Id. at 348.)  Dr. Coll did discuss surgery with Ms. Reynolds, however, they opted for her to wear wrist splints at night.  (Id.)  Two months later,

3

Dr. Coll's findings were echoed by Dr. Schwartz, who also commented that Reynolds had experienced a similar problem in 1985 which was resolved with splints.  (Id. at 373.)[1]

### B.    Reynolds' Testimony

At the hearing before ALJ Volkman, Reynolds testified that she had not worked since December of 2002, because she "was exhausted all the time."  (Id. at 29.)  After she stopped working, Reynolds went on short term disability for six months and when that program ended, obtained Medicaid and food stamps.  (Id.)

Reynolds testified that she was diagnosed with osteoarthritis, fibromyalgia, and carpal tunnel syndrome.  (Id. at 30.)  She takes a variety of medications for these conditions, and testified that they do relieve her pain for four to five hours.  (Id. at 32-33.)  She also stated that she is able to sleep for four to five hours at a time.  (Id. at 31.)  Reynolds testified that she attends the Modern Maturity Center four times a week for an hour of water therapy.  (Id. at 34-35.)  Additionally, Reynolds vacuums (Id. at 35.), works in her garden (Id. at 37.), but for only a half hour at a time (Id. at 42.), and can shop with a cart for 30-45 minutes.  (Id. at 40.)  Reynolds testified that she must take a two-hour nap every day because of her exhaustion after any activity.  (Id. at 40.)

### C.    Reynolds' Neighbor's Testimony (Ms. Donna Kornrumf)

Ms. Donna Kornrumf ("Kornrumf"), Reynolds' neighbor and friend of four years, testified that Reynolds has stopped gardening to the extent she had at the beginning of their friendship, sleeps a lot, tires easily, and does little housework.  (Id. at 47-49.)  Additionally, Kornrumf stated that she cooks for Reynolds.  (Id. at 48.)  Kornrumf testified that Reynolds spends a lot of time going to

---

[1] The record (D.I. 13) contains copious amounts of medical evidence.  For purposes of this motion, however, only those most relevant to Reynolds' specific claims are discussed.

different doctors appointments, "I've seen it where she's gone every day, . . . [a]t least once a week she's seeing a doctor." (Id. at 50.) Kornrumf further testified that Reynolds "swims every day . . . [as] part of her therapy." (Id.) When asked by ALJ Volkman if she had to assist Reynolds in the process of writing checks, Kornrumf stated that she did not. (Id. at 51.)

### D.      Vocational Expert Testimony

At the hearing, ALJ Volkman asked vocational expert, Mindy Lubeck ("Lubeck"), what kinds of jobs would be available to a person of the same age and education as Reynolds, assuming that the job was sedentary and consisting of simple one-two tasks, because of Reynolds' alleged memory problems. (Id. at 53-54.) Lubeck responded that there are jobs that a person with Reynolds' limitations could perform, such as unskilled assembly jobs, charge account clerks and cashier clerks II. (Id. at 54.) She estimated that there were a total of 367,000 of these types of jobs available nationally and 1,350-1,400 available in Delaware. (Id.) When asked by ALJ Volkman if a person who needed to rest for several hours a day and was unable to work one day of a normal work week would be able to perform any of these jobs, Lubeck responded that she didn't believe that person would be able to hold a job. (Id. at 55.) On cross examination by Reynolds' counsel, Lubeck acknowledged that of the jobs she had listed Reynolds as being able to complete, only charge account clerks did not require repetitive hand action. (Id. at 56.)

### E.      The ALJ's Findings

ALJ Volkman found Reynolds' complaints only partially credible because they were "not supported by the medical records . . . and not of sufficient severity as to warrant a finding of 'disability.'" (Id. at 18.) In particular, ALJ Volkman stated:

> [D]espite the claimant's allegations of disabling pain and limitations, she reports in her daily activities questionnaire [], that she prepares her own meals, goes food shopping (leaning on the cart), and does sewing and quilting as hobbies with no assistance.  Additionally, the claimant was observed in person, by the Social Security Administration employee . . . to have no difficulty standing, walking, seeing, using her hands, writing, breathing or talking.  Additionally, she was noted to have no difficulty hearing, reading, understanding or concentrating, or answering; the only limitation noted was for sitting and that after sitting 30 minutes she stood for 5-10 minutes.  This is not the picture of a person suffering from disabling pain, distress and limitations, and militates against a finding of disability.

(Id. at 18-19.)

The ALJ found that Reynolds was able to perform "a significant range of sedentary work" and concluded that "she is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  A finding of 'not disabled' is therefore reached."  (Id. at 19-20.)

## III.   STANDARD OF REVIEW

### A. Motion for Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (c).  In determining the appropriateness of summary judgment, the court must "review the record 'taken as a whole' . . . draw[ing] all reasonable inferences in favor of the nonmoving party[,]" but refrain from weighing the evidence or making credibility determinations."  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097 (2000) (citation omitted).  If the court is able to determine that "there is no genuine issue as to any material fact" and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate.  *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P.  56(c)).

### B. Review of ALJ Findings

6

The court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence does not mean a "large or a considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

"Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. Jul. 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). To demonstrate that the ALJ's opinion is based on substantial evidence, the ALJ must make specific findings of fact to support his or her ultimate findings. *Portlock v. Apfel*, 150 F.Supp.2d 659, 667 (D. Del. 2001) (citing *Stewart v. Sec'y of HEW*, 714 F.2d 287, 290 (3d Cir. 1983)). Thus, the inquiry is not whether the court would have made the same determination, bu rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). In Social Security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56(c). *See Woody v. Sec'y of the Dep't of Health and Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV.    DISCUSSION

Reynolds' first argument is that the ALJ did not consider her alleged fatigue in determining that she was capable of performing sedentary work.  In reaching her decision, however, ALJ Volkman "considered all symptoms, including pain and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence."  (D.I. 13 at 18.) Moreover, the record demonstrates that Reynolds  responded well to treatments for her sleep apnea. The CPAP machine prescribed for her use by Dr. Coll resulted in a 40% increase in her sleep efficiency and follow-up visits confirmed she was "doing well" with her treatment. (Id. at 282, 284, 349.)  The record also shows medical opinions stating that Reynolds' fatigue would be lessened through activity and diet, and that she would in fact benefit from increased exercise.  For example, on May 28, 2003, Dr. Islam specifically recommended that Reynolds become more active and change her diet to alleviate fatigue. (Id. at 354.)  Thus, it would seem that rather than increasing her fatigue, Reynolds will benefit from the activity work would provide.

Reynolds' second argument is that ALJ Volkman's findings that her carpal tunnel syndrome ("CTS") was not severe, and that there had been no definitive diagnosis of depression or fibromyalgia are not supported by the record.  This argument also lacks merit.  Dr. Coll diagnosed Reynolds with "mild to moderate" CTS. (Id. at 348.)  Upon diagnosis, she discussed treatment options with Dr. Coll and ultimately decided to wear wrist splints. (Id.)  Dr. Coll's finding of mild to moderate CTS was echoed by Dr. Schwartz, who noted that Reynolds had a similar problem in 1985 which was resolved by her wearing splints. (Id. at 373.)  As such, there is substantial evidence in the record to support ALJ Volkman's decision that Reynolds' CTS was not severe.

ALJ Volkman's decision that Reynolds was not diagnosed with depression is also supported

by the record.  For example, a psychiatric review of Reynolds, performed by Pedro M. Ferreira on March 27, 2003, did not find depression but, rather, concluded that she had no medically determinable impairments. (Id. at 233.)  Additionally, at the hearing before ALJ Volkman, Reynolds testified that Wellbutrin was prescribed to her for pain management purposes, not to treat depression.  (Id. at 31, 43.)  Nor did she ever mention depression as one of her diagnoses.  (Id. at 30.)  Given the foregoing, ALJ Volkman's conclusion that Reynolds had no definitive diagnosis of depression is supported by substantial evidence.

Finally, the record supports ALJ Volkman's conclusion that Reynolds had no definitive diagnosis of fibromyalgia.  On September 13, 2003, Dr. Moyer declined to definitively diagnose Reynolds with fibromyalgia, rather referring to it as only a possibility.  (Id. at 387-88.)  Dr. Islam reported that Reynolds' condition gave her the impression of fibromyalgia, but did not conclusively diagnose it. (Id. at 247, 250, 253, 256, 353.)  Additionally, Dr. Islam commented that fibromyalgia is not disabling, would not prevent Reynolds from working, and that Reynolds would, in fact, benefit from the activity as "the best treatment for fibromyalgia is increased activity, not less."  (Id. at 354.)

Reynolds' third and final argument is that the ALJ's determination that she was only partially credible is not supported by the record.  In reaching her credibility determination, the ALJ pointed to medical evidence, a daily activities questionnaire filled out by Reynolds, and a Field Office Disability Report completed by a Social Security Administration employee.  (Id. at 18-19.)  Each of these was an appropriate source for the ALJ to consider.  *See* 20 C.F.R. §§ 404.1529(c)(3) (allowing the ALJ to consider "all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons.").  Moreover, despite her

9

claims of suffering from disabling pain, Reynolds testified at the hearing to being able to work in her garden, complete and benefit from an hour-long pool therapy session, and being able to shop for 30-45 minutes while leaning on a cart.  (Id. at 37, 38, 40.)  Further, a field office employee noted that Reynolds had the ability to sit for 30 minutes before having to stand for 5-10 minutes.  (Id. at 105.)

Based on the foregoing, the court concludes that the record contains substantial evidence to support ALJ Volkman's finding that Reynolds was only partially credible.

Simply put, the record contains a substantial amount of evidence to support ALJ Volkman's decision.   Thus, the court will grant the Commissioner's motion for summary judgment and deny the plaintiff's motion for summary judgment.


Dated: September 27, 2007                           /s/ Gregory M. Sleet
                                                    CHIEF, UNITED STATES DISTRICT JUDGE

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARY A. REYNOLDS            )
                           )
            Plaintiff,      )
                           )
    v.                      )            Civil Action No. 04-1408 GMS
                           )
JO ANNE B. BARNHART,        )
Commissioner of Social Security,  )
                           )
            Defendant.      )

## **ORDER**

For the reasons stated in the court's memorandum of this same date, IT IS HEREBY

ORDERED that:

1.    The plaintiff Reynolds' motion for summary judgment (D.I. 15) is DENIED

2.    The defendant Commissioner's motion for summary judgment (D.I. 17) is

    GRANTED.

3.    Judgment is hereby ENTERED in favor of the Commissioner on all claims pending

    against her.

Dated: September 27, 2007            /s/ Gregory M. Sleet_____
                                     CHIEF, UNITED STATES DISTRICT JUDGE